```
1    Q    So he had used your shop before?

2    A    Uh-huh.  He has been there before.

3    Q    Would you say Corey is someone who would commit

4         robberies?

5              MR. VALESKA:  I'm going to object.

6              THE COURT:  I sustain the objection.

7    Q    Do you know Mr. McNabb well enough to know his

8         character?

9    A    No.

10   Q    Did Corey strike you as someone who would commit a

11        robbery?

12             MR. VALESKA:  Objection.

13             THE COURT:  I sustain the objection.

14   Q    So you say that receipt, there's the potential

15        that it could have come from your business?

16   A    Yes.

17             MR. BAXLEY:  Thank you.

18                    REDIRECT EXAMINATION

19   BY MR. VALESKA:

20   Q    The only other question I would like to ask you,

21        please, sir, if I could, the receipts to your

22        business, the originals, are they kept on the open

23        counter where anybody could come in and get one?

24   A    Yes.

25   Q    I would like to ask you, Mr. Baxley asked, there's
```

330

1    a possibility some other employee that worked for

2    you could have used some type of receipt.  Is that

3    a receipt that's used in your business that shows

4    there's any carbon on the back so an actual

5    estimate was done and kept in the ordinary course

6    of business for your records?  It's not there, is

7    it?

8         MR. BAXLEY:  I object, Your Honor.  I didn't

9    put it in that context.

10        MR. VALESKA:  I believe that's the rebuttal

11   I've already asked.  I have a right to ask him.

12        THE COURT:  What was the question?

13        MR. BAXLEY:  Talking about carbons on it.  I

14   said if there was employees that did work outside

15   of his business --

16        MR. VALESKA:  I'll withdraw and ask this way.

17  Q  Mr. Baxley asked if there were employees that

18     worked outside or possibilities that they could

19     have got a receipt or used a receipt.  Do those

20     employees keep the receipts and turn them in in

21     the ordinary course of your business?

22  A  I'm not following the question.

23  Q  In other words, are you responsible for work

24     that's done under your name for Greg's Complete

25     Auto Repair, in other words, to Florida Department

```
 1          of Revenue and or licensing as well as the federal
 2          government for taxes?
 3     A    Yes.
 4     Q    So the question would be, Mr. Baxley said if any
 5          employee could have possibly got a receipt like
 6          this, my question to you is the employees who
 7          worked for you on June 27, 2000, any of those
 8          mechanics still around?
 9     A    No.
10     Q    You know their names, correct, the records,
11          because they got paid, correct?
12     A    Yes.
13               MR. VALESKA:  That's all.
14               THE COURT:  I'm just a little bit confused.
15          You say your book has a white copy and a yellow
16          copy?
17               THE WITNESS:  Yes.
18               THE COURT:  Which copy do you give to the
19          customer?
20               THE WITNESS:  The yellow copy.
21               THE COURT:  The yellow copy.  Not the white
22          copy?
23               THE WITNESS:  No.
24               THE COURT:  You keep the white copy for your
25          records?
```

```
 1              THE WITNESS:  Yes.

 2              MR. BAXLEY:  Can I ask one more question,

 3      Your Honor?

 4              THE COURT:  Sure.

 5                    RECROSS EXAMINATION

 6   BY MR. BAXLEY:

 7   Q    One more follow-up with this.  Did you have an

 8        employee by the name of Travis Johnson?  Named

 9        Trap -- nicknamed Trap?

10   A    Yes.  Actually a subcontractor, yes.

11   Q    Subcontractor.  How does that work in your

12        business?

13   A    Subcontractors come in off the street, apply for

14        work.  I put them on a job.  They do it.  I pay

15        them right then and there.

16   Q    So that would not be something you kept up with?

17   A    You mean as in --

18   Q    As in the taxes and such that Mr. Valeska keeps

19        alluding to?

20   A    Yes.  I would keep up with the taxes.  But I would

21        get it from the customer itself, not from him.

22   Q    Is it possible Trap could have filled out a

23        receipt and used it under your name when he was in

24        the independent contract mode?

25              MR. VALESKA:  I object to what's possible.
```

1          THE COURT:  Sustained.  Anything is

2     possible.

3          MR. BAXLEY:  No further questions, Your

4     Honor.

5          MR. VALESKA:  No more questions.  Ask if he

6     could be excused.

7          THE COURT:  You're excused.

8          MR. VALESKA:  One last witness, Judge White.

9     Very short.  Right here.  Call Willie Williamson

10     to the stand.

11               ~~WILLIE WILLIAMSON~~

12     having first been duly sworn, was examined and

13     testified as follows:

14               DIRECT EXAMINATION

15  BY MR. VALESKA:

16  Q    Tell us your name.

17  A    Sergeant ~~Willie Will~~iamson.

18  Q    What I want to ask you, Sergeant Williamson, back

19     on or about June 14, 2001, you worked as a police

20     officer in the City of Dothan on that occasion?

21  A    Yes, I was.

22  Q    Can you tell the ladies and gentlemen of the jury

23     on June 14, 2001, were you working with

24     Investigator Jimmy Singleton with the Dothan

25     Police Department?

```
 1    A    Yes.

 2    Q    Did you have the occasion on June 14, 2001, to see

 3         a Yvette McNabb, who was the wife of Corey McNabb,

 4         in a white van with wood paneling?

 5    A    The Dodge mini-van, yes, sir.

 6    Q    That's what I'm asking about.

 7    A    1989.

 8    Q    And did you talk with her?

 9    A    Yes.

10    Q    And, Sergeant -- Investigator Singleton also

11         present?

12    A    Yes.

13    Q    What I want to ask you.  Did she make any

14         statements to you in your presence with Singleton

15         in reference to about her husband, Corey McNabb?

16    A    Yes, she did.

17    Q    Can you tell us what she said?

18    A    She said that they were split up and she hadn't

19         seen him for two weeks.

20    Q    Did she make any indications to you about the

21         items that were found in her house, anything about

22         those?

23    A    We asked her if she could explain why the items we

24         found in the house in her apartment, rather, they

25         were from a robbery so we were asking her why they
```

```
 1          would be there.  If her or her husband didn't have
 2          any knowledge of the robbery.  And she stated that
 3          he had not -- Mr. McNabb had not been home in two
 4          weeks.
 5     Q    Now, final question I want to ask you.  Did she
 6          indicate or tell you in any manner or fashion at
 7          that time that he was down in Orlando and she had
 8          just left him?  She didn't tell you that, did she?
 9     A    No, sir.
10               MR. VALESKA:  Pass the witness.  Thank you,
11          Judge White.
12               THE COURT:  Mr. Baxley.
13                         CROSS EXAMINATION
14     BY MR. BAXLEY:
15     Q    Sergeant Williamson, Ms. McNabb told you that
16          Corey had not been in town for two weeks; is that
17          correct?
18     A    She said she hadn't seen him in two weeks.
19     Q    Two weeks?
20     A    Right.
21     Q    Did you see Corey McNabb at that time?
22     A    No.
23               MR. BAXLEY:  No further questions, Your
24          Honor.
25                       REDIRECT EXAMINATION
```

BY MR. VALESKA:

1

2    Q    In reference to seeing Corey McNabb on that day,

3         did you go back to her and McNabb's apartment on

4         or about June 18th of 2001 while she was still

5         living in the same apartment?

6    A    Yes.

7    Q    Did you ascertain whether or not -- or where he

8         was then from her?

9    A    We had a tip that he might be there, and we went

10        to the residence.  Ms. McNabb was there.  She

11        allowed us entry into the home.  Mr. McNabb was

12        not there.

13   Q    At that point in time did she tell you once again

14        that he was down in Orlando, Florida?

15   A    No.

16            MR. VALESKA:  That's all.  Pass the witness.

17            MR. BAXLEY:  No further questions, Your

18        Honor.

19            THE COURT:  You may step down.

20            MR. VALESKA:  That's all we have, Judge

21        White.  State of Alabama rests.

22            THE COURT:  Let me ask the jury to go back to

23        the jury room and just recall the instructions

24        I've given to you about not discussing the case

25        among yourselves or with anyone else.  We'll call

```
 1            for you shortly.
 2                      (Jury not present.)
 3            THE COURT:  It's your opportunity to make any
 4       motion that you might want to make.
 5            MR. BAXLEY:  No motions, Your Honor.
 6            THE COURT:  No motions?
 7            MR. BAXLEY:  No motions.
 8            THE COURT:  Do you have some requested
 9       charges?
10            MR. BAXLEY:  Yes, sir, I do.
11            THE COURT:  Let's take about ten minutes, and
12       then we'll get started back.
13                      (Off the Record.)
14            THE COURT:  Bring the jury.
15                      (Jury present.)
16            THE COURT:  Gentlemen, you may argue your
17       case to the jury.
18                      (At which time closing arguments were
19                       made by Mr. Valeska.)
20            MR. BAXLEY:  Your Honor, that's
21       objectionable.  Talking about child support.
22       There's no child support order of that --
23            MR. VALESKA:  There was testimony he had
24       obligation to support other children in Florida.
25       I'll withdraw it and say he has obligation for
```

338

```
 1      other children.
 2                (At which time closing arguments were
 3                 continued by Mr. Valeska.)
 4           THE COURT:  Mr. Baxley.
 5                 (At which time closing arguments were
 6                  made by Mr. Baxley.)
 7           MR. VALESKA:  I object.  I object.  He got a
 8      case of pennies himself.  I don't believe they
 9      were ever offered into evidence or there's any
10      predicate that --
11           MR. BAXLEY:  Your Honor, I'm not attempting
12      to introduce pennies into evidence.
13           MR. VALESKA:  Go ahead.  I withdraw.  I
14      withdraw.
15           MR. BAXLEY:  I'm simply using a prop.
16           MR. VALESKA:  I'll withdraw.
17                 (At which time closing arguments were
18                  continued by Mr. Baxley.)
19           THE COURT:  Mr. Valeska.
20                 (At which time rebuttal arguments were
21                  made by Mr. Valeska.)
22           MR. BAXLEY:  I object to him testifying.  Is
23      he offering any testimony here?
24           THE COURT:  I think he's submitting.
25           MR. VALESKA:  What he's arguing about.
```

1          THE COURT:  Go ahead.

2               (At which time rebuttal arguments were

3               continued by Mr. Valeska.)

4          THE COURT:  Now, ladies and gentlemen, you're

5     the trial jury of this case of the State of

6     Alabama versus Ruben Corey McNabb, and this

7     Defendant is being placed upon trial before you

8     here yesterday and today on an indictment which

9     was returned by the grand jury of Houston County,

10    Alabama, back on or about the 30th day of August,

11    2001.  And this indictment charges the Defendant,

12    Ruben Corey McNabb, with robbery in the first

13    degree.  It says here that the grand jury of said

14    county charge that before the finding of this

15    indictment that Ruben Corey McNabb, whose name is

16    to the grand jury otherwise unknown, did in the

17    course of committing a theft of U.S. currency,

18    postage stamps, and food stamps, the property of

19    Winn Dixie, use force against the person of Ron

20    Reeves and Patsy Lynn Roach with the intent to

21    overcome their physical resistance or physical

22    power of resistance or did threaten the imminent

23    use of force against the person of Ron Reeves and

24    Patsy Lynn Roach, with the intent to compel

25    acquiescence to the taking of or escaping with the

1    property while the said Ruben Corey McNabb was

2    armed with a deadly weapon or a dangerous

3    instrument; to wit, a handgun, in violation of

4    Section 13A-8-41 of the Code of Alabama against

5    the peace and dignity of the State of Alabama.

6           Now, as I've said before, that charges

7    this Defendant here with robbery in the first

8    degree committed against the persons of Ron Reeves

9    and Patsy Roach, who have testified before you

10   here during the course of this trial.

11          Now, let me advise you, ladies and

12   gentlemen, that this indictment is not any

13   evidence in the case, and it must not and it

14   cannot be considered by you as any evidence of the

15   Defendant's guilt in this case.  This indictment

16   is merely the formal charge that has been placed

17   against this Defendant by the grand jury of this

18   county so that he could be brought for trial

19   before you, the petit jury, in order to make a

20   determination as to his guilt or innocence.  So

21   you must not and you cannot consider this as any

22   evidence against him.  It's just the vehicle by

23   which the charge gets from the grand jury of the

24   county to a petit jury for a trial and a

25   determination of guilt or innocence.

1              Now, I'm sure you're wondering what it
2       takes to make up the charge of robbery in the
3       first degree because that is what the Defendant is
4       charged with.  You know, I'm sure the question has
5       entered your mind.  Judge, you know, what is
6       robbery in the first degree?  How do we know what
7       robbery in the first degree is?  And I will just
8       read to you from the Code of Alabama what it says
9       that robbery is.
10             The Code of Alabama in Section 13A-8-41
11      Subsection A Subsection 1 says that a person
12      commits the crime of robbery in the first degree
13      if in the course of committing a theft he uses or
14      threatens the imminent use of force against the
15      person of the owner of the property or any person
16      present with the intent to overcome that person's
17      physical resistance or physical power of
18      resistance and in so doing he is armed with a
19      deadly weapon or a dangerous instrument.
20      Therefore, in order to constitute the offense of
21      robbery in the first degree in this particular
22      case, the State must have proven to you beyond a
23      reasonable doubt that this Defendant here, Ruben
24      Corey McNabb, committed or attempted to commit the
25      theft of U.S. currency, postage stamps, and food

1    stamps, which belonged to Winn Dixie; and that in

2    the course of committing or attempting to commit

3    that theft or in immediate flight after the

4    attempt or commission of the theft that the

5    Defendant used -- that the Defendant either used

6    force against the person of Ron Reeves and Patsy

7    Lynn Roach with the intent to overcome their

8    physical resistance or physical power of

9    resistance or that he threatened imminent use of

10   force against the person of Ron Reeves and Patsy

11   Lynn Roach with the intent to compel acquiescence

12   to the taking or escaping with that property, and

13   that -- and then, thirdly, at that time that the

14   Defendant was armed with a deadly weapon or a

15   dangerous instrument.

16            A person commits the crime of theft of

17   property if he knowingly obtains or exerts

18   unauthorized control over the property of another

19   with the intent to deprive the owner of that

20   property.

21            Our law says that a deadly weapon is a

22   firearm or anything manifestly designed or adapted

23   for the purpose of inflicting death or serious

24   physical injury.

25            The law also says that a person acts

1       intentionally with respect to a result or to

2       conduct when his purpose is to cause that result

3       or to engage in that conduct.

4              Now, if you after weighing and

5       considering all of the evidence in the case you

6       believe beyond a reasonable doubt that the State

7       has proven each of the elements that I have set

8       out for you, the elements of robbery in the first

9       degree as charged, then, of course, you should

10      find the Defendant guilty of robbery in the first

11      degree.  On the other hand, if you find that the

12      State has failed to prove beyond a reasonable

13      doubt any one or more of the elements of the

14      offense of robbery in the first degree, then, of

15      course, you cannot find the Defendant guilty of

16      robbery in the first degree.

17             Now, just so that your understanding of

18      what it takes to constitute the offense of robbery

19      in the first degree is clear, I want to go over

20      the definition and the elements with you one more

21      time.

22             The law says that a person commits the

23      crime of robbery in the first degree if in the

24      course of committing a theft he uses or threatens

25      the imminent use of force against the person of

1    the owner of the property or any person present

2    with the intent to overcome that person's physical

3    resistance or physical power of resistance and in

4    doing -- in so doing he is armed with a deadly

5    weapon or a dangerous instrument.

6           Therefore, in order for you to -- in

7    order for you to convict this Defendant, Ruben

8    Corey McNabb, of robbery in the first degree in

9    this case, you must be satisfied beyond a

10   reasonable doubt that the Defendant, Ruben Corey

11   McNabb, committed or attempted to commit a theft

12   of property, that being U.S. currency, postage

13   stamps, and food stamps which belonged to the Winn

14   Dixie Company.  And, then, secondly, that in the

15   course of attempting or attempting to commit the

16   theft or in immediate flight from the theft, the

17   Defendant either used force against the person --

18   of the persons of Ron Reeves and Patsy Lynn Roach

19   with the intent to overcome their physical

20   resistance or physical power to resist or

21   threatened imminent use of force against the

22   persons of Ron Reeves and Patsy Lynn Roach with

23   the intent to compel their acquiescence to his

24   taking or escaping with that property.  And at

25   that time that the Defendant was armed with a

1    deadly weapon or a dangerous instrument.

2         And you remember what I told you a

3    deadly weapon or a dangerous instrument is.  The

4    law just says that a deadly weapon is a firearm.

5    Therefore, I handgun as charged in the indictment

6    would be within the definition of a deadly

7    weapon.  A deadly weapon is a firearm or anything

8    manifestly designed, made, or adapted for the

9    purpose of inflicting death or serious physical

10   injury.

11        And then, of course, I told you that a

12   person commits the crime of theft of property,

13   stealing property, if he knowingly obtains or

14   exerts unauthorized control over the property of

15   another person or a company or a corporation with

16   the intent to deprive the owner of that property.

17        And I also told you what we mean by --

18   really, attempts to define intentionally are

19   almost sort of silly to me.  But -- because we all

20   know what intentionally means.  But I do want to

21   tell you what the law says that it means.  It says

22   that a person acts intentionally with respect to a

23   result or to conduct when his purpose is to cause

24   that result or to engage in that conduct.

25        Now, you ladies and gentlemen, of

1    course, have heard many witnesses who have
2    testified during the course of this trial.  We
3    started this trial yesterday morning, I believe.
4    So during the course of the day yesterday and all
5    day today you've heard many witnesses who have
6    testified.  And the Court instructs you that if
7    you believe that any witness who testified,
8    whether it was for the State or the Defendant, was
9    interested in bringing about -- if you believe
10   that any witness was interested in either bring
11   about a conviction or an acquittal of this
12   Defendant, then the law says that you have the
13   right to take that interest into consideration
14   when you come to weigh and to consider that
15   witness' testimony and then give to that witness'
16   testimony whatever weight and whatever credit
17   that you deem it to be entitled.  Also, if you
18   believe that there has been any witness who has
19   testified during the course of this trial who you
20   believe has testified to you willfully falsely;
21   that is, if you believe that any witness has lied
22   to you about any material matter, then the law
23   gives you the right to cast aside that witness'
24   testimony and to say that you won't believe
25   anything that he or she has testified about.  On

1   the other hand, the law also says that if you

2   believe that any witness has testified to you

3   willfully falsely about any material matter, that

4   you could cast aside that part that you believe

5   the witness testified willfully falsely about and

6   refuse to believe it and then take that part of

7   the witness' testimony that you believe that he or

8   she has testified truthfully about and give to it

9   -- give to the truthful part whatever weight and

10  whatever credit that you ladies and gentlemen deem

11  it to be entitled.

12          Now, this Defendant, of course, as you

13  recall testified during the course of the trial in

14  his own behalf.  And the law gives him that right

15  and it gives him that privilege.  A defendant who

16  is being placed upon trial on a criminal charge in

17  a court of law in this country has the right to

18  refuse to testify, to stay off the witness stand,

19  or he can take the witness stand and give

20  testimony.  And the law says that when a defendant

21  does take the witness stand, that the jury would

22  not be justified in saying, well, he's the

23  defendant, he has something to gain in this case;

24  therefore, we're not going to believe anything

25  that he says or he testifies about.  You can't

```
 1          just refuse to consider his testimony.  The law
 2          says that you have to take his testimony and to
 3          weigh it and consider it along with all the other
 4          testimony in the case.  But when you do take his
 5          testimony and weigh it and consider it with all
 6          the other testimony in the case, the law does give
 7          you the right to consider the fact that he is the
 8          defendant in the case and he is interested in the
 9          result of your verdict, and then give to his
10          testimony whatever weight and whatever credit that
11          you ladies and gentlemen deem it to be entitled.
12                   Now, the Defendant, of course, went
13          into the trial of this case with a presumption of
14          innocence in his favor.  And that presumption of
15          innocence is a matter of evidence in his favor,
16          and it attends him throughout the trial until his
17          guilt is established to your satisfaction beyond a
18          reasonable doubt.  And, of course, if after you
19          have weighed and considered all of the evidence in
20          the case, that for the State and that for the
21          Defendant, if there -- if there remains in your
22          mind a reasonable doubt of his guilt; that is, a
23          doubt for which you can give a reason that came
24          from the evidence and from the evidence alone,
25          then, of course, he would be entitled to the
```

1    benefit of that doubt and would be entitled to an

2    acquittal at your hands.

3         You have heard these attorneys and the

4    Court use the term repeatedly reasonable doubt.

5    Of course, the reason being is because the law

6    requires that you must be satisfied beyond a

7    reasonable doubt as to the guilt of the party

8    being tried before you would be justified in

9    returning a verdict of guilty as against that

10   party.  Now, ladies and gentlemen, that does not

11   mean that you must be satisfied beyond all doubt

12   and to an absolute certainty and to the point that

13   you could not possibly be mistaken.  But it does

14   mean that if after you have weighed and considered

15   all of the testimony in the case, that for the

16   State and that for the Defendant, if it is your

17   fixed opinion, your fixed conviction and judgment,

18   that the Defendant is guilty, then within the

19   meaning of our law you are convinced beyond a

20   reasonable doubt.

21        The first thing that you should do when

22   you get back into the jury room is to select a

23   foreperson and allow your foreperson to preside

24   over the deliberations, to keep order, to take a

25   count of the vote once you're prepared to vote on

1    the case, and then to sign the verdict once a

2    verdict has been rendered.  And, of course,

3    whatever verdict you render in this case, each and

4    every one of you must agree upon it.  It must be

5    unanimous.

6         And, of course, if after you've weighed

7    and considered all of the evidence, that offered

8    by the State and that offered by the Defendant, if

9    you're convinced beyond a reasonable doubt that

10   this Defendant is guilty as charged, you should

11   find him guilty.  And in that event the form of

12   your verdict would simply be, we, the jury, find

13   the Defendant, Ruben Corey McNabb, guilty of

14   robbery in the first degree as charged in the

15   indictment.  You would not fix any punishment.

16   That would be left up to the Court.  The law

17   leaves that within the discretion of the Court.

18        On the other hand, if after you have

19   weighed and considered all of the evidence, that

20   offered by the State and that offered by the

21   Defendant, if you're not satisfied beyond a

22   reasonable doubt that the Defendant is guilty as

23   charged, you should find him not guilty.  In that

24   event the form of your verdict would be simply,

25   we, the jury, find the Defendant, Ruben Corey

McNabb, not guilty. I have prepared for your use in arriving at your verdict forms of verdicts in line with those that I've just given you in the Court's oral charge.

Now, there have been certain charges that have been requested in this case that state correct propositions of law and are to be taken by you along with the Court's oral charge in arriving at your verdict in this case.

I charge you, members of the jury, that the presumption of innocence with which the Defendant, Ruben McNabb, enters into the trial is a fact in the case which must be considered with all the evidence and is not to be disregarded by you.

I charge you, members of the jury, that circumstances, no matter how strong, which merely arouse a suspicion of guilt cannot serve as a basis for convicting Ruben McNabb.

I charge you, members of the jury, that circumstances merely consistent with guilt or causing suspicion thereof are not sufficient to justify a conviction of Ruben McNabb.

I charge you, members of the jury, that the Defendant, Ruben McNabb, should not be

1 convicted of a crime on mere suspicion of or fear

2 that he might have committed the act.  The theory

3 that the Defendant so committed the act must be

4 supported by the legal evidence before you.

5    I charge you, members of the jury, that

6 you cannot convict Ruben McNabb on mere

7 possibilities, surmise, suspicion, or speculation,

8 however strong they may be.  A verdict of guilty

9 based upon mere possibilities, surmise, suspicion,

10 or speculation would violate the oath that you

11 members of the jury have taken.  If after

12 carefully and fairly reviewing the facts you're

13 not satisfied of Ruben McNabb's guilt, then you

14 have a reasonable doubt and Ruben McNabb should be

15 found not guilty.

16    I charge you, members of the jury, that

17 in a robbery prosecution for robbery in the first

18 degree the State must among -- the State must

19 prove beyond a reasonable doubt that during the

20 course of the committing of a theft that Ruben

21 McNabb used force against or threatened the use

22 of force against the employees of Winn Dixie

23 located on Westgate Parkway with the intent to

24 overcome their physical resistance or physical

25 power of resistance or threatened the imminent use

1 of force against the employees of the Winn Dixie

2 located on Westgate Parkway with the intent to

3 compel acquiescence to the taking or escaping with

4 the property of the Winn Dixie located on Westgate

5 Parkway and Ruben McNabb was armed with a deadly

6 weapon or a dangerous instrument or caused serious

7 physical injury to the employees of Winn Dixie.

8 If the State cannot prove that beyond a reasonable

9 doubt, you must find the Defendant not guilty.

10    I charge you, members of the jury, that

11 in a robbery in the first degree prosecution the

12 State also must prove beyond a reasonable doubt

13 that the Defendant, Ruben McNabb, to the exclusion

14 of all others was one of the two alleged to have

15 committed the robbery of Winn Dixie located on

16 Westgate Parkway.  If the State does not prove

17 this beyond a reasonable doubt, you must find the

18 Defendant not guilty.

19    I charge you, members of the jury, in

20 order to convict Ruben McNabb of robbery in the

21 first degree, each of you must be convinced by the

22 evidence beyond a reasonable doubt of each and

23 every element of the crime of robbery in the first

24 degree.

25    I charge you, members of the jury, if

1    the State has left a reasonable doubt as to any

2    one of the individual elements of the crime of

3    robbery in the first degree, then that is enough

4    doubt to find the Defendant not guilty.

5              I charge you, members of the jury, that

6    in considering the evidence and testimony given in

7    the trial of this case, you should not attach any

8    more credibility to the testimony of any law

9    enforcement officer simply because he or she is

10   employed as a law enforcement officer than you

11   would to the testimony of anyone else.

12             I charge you, members of the jury, that

13   the Prosecution has the burden of proving the

14   Defendant guilty beyond a reasonable doubt.  Some

15   of you may have served as jurors in civil cases

16   where you were told that it is only necessary to

17   prove that a fact is more likely true than not.

18   In criminal cases the Government's proof must be

19   more powerful than that.  It must be beyond a

20   reasonable doubt.  Proof beyond a reasonable doubt

21   is proof that leaves you firmly convinced of the

22   Defendant's guilt.  There are very few things in

23   the world that we know with absolute certainty.

24   And in criminal cases the law does not require

25   proof that overcomes every possible doubt.  If

1       based on your consideration of the evidence you

2       are firmly convinced that the Defendant is guilty

3       of the crime charged, you must find him guilty.

4       If on the other hand you think there's a real

5       possibility that he is not guilty, then you must

6       give him the benefit of the doubt and find him not

7       guilty.

8                  Mr. Valeska, does the State have any

9       exception to the Court's charge?

10          MR. VALESKA:  Satisfied, Judge White.

11          THE COURT:  Mr. Baxley?

12          MR. BAXLEY:  Yes.  To number seven.

13          THE COURT:  I'll let you put your exception

14      in the Record.

15                 Now, ladies and gentlemen, with that,

16      I'm going to allow you to retire and to make up

17      your verdict; and if you will, when you've reached

18      a verdict, just let the security officer or the

19      bailiff know by knocking on the door.  You may

20      retire at this time except Ms. Taylor and Ms.

21      Watford.  If the two of you will just keep your

22      seats and the remainder may retire.

23                 (Jury not present.)

24          THE COURT:  You two ladies were the

25      alternates.  So you may go at this time and just

```
 1          come back at nine o'clock in the morning to the

 2          jury assembly room.  Thank you very much.

 3                      (At which time the alternate jurors were

 4                      excused.)

 5                      (At 3:40 p.m. the jury began their

 6                      deliberations.)

 7                      (Off the Record.)

 8                      (At 5:55 p.m. the Court was notified the

 9                      jury had reached a verdict.)

10          THE COURT:  Bring the jury.

11                      (Jury present.)

12          THE COURT:  Now, Mr. Wood, I understand that

13          you're the foreman of the jury; is that correct?

14          THE FOREPERSON:  Yes, sir.

15          THE COURT:  And the jury has reached a

16          verdict?

17          THE FOREPERSON:  Yes, sir.

18          THE COURT:  And you've handed it to me?

19          THE FOREPERSON:  Yes, sir.

20          THE COURT:  I'll read it.

21                      It says, we, the jury, find the

22          Defendant, Ruben Corey McNabb, guilty of robbery

23          in the first degree as charged in the indictment.

24                      (At which time the jury was polled by

25                      the Court.)
```

357

```
 1              THE COURT:  Let the Record show that the
 2        Court polled the jury and that each and every
 3        member of the jury replied that the verdict was
 4        his or hers.
 5                  Now, with that, ladies and gentlemen,
 6        you're discharged until nine o'clock in the
 7        morning.  If you will, just come back to the
 8        assembly room at nine in the morning.  Thank you
 9        very much.
10                  (At which time the jury was excused.)
11              THE COURT:  Mr. McNabb, approach the bench,
12        please.
13              THE DEFENDANT:  (Complied.)
14              THE COURT:  Now, Ruben Corey McNabb, the jury
15        having found you guilty of robbery in the first
16        degree as charged in the indictment, based upon
17        that jury verdict, I hereby adjudge you guilty of
18        robbery in the first degree as charged in the
19        indictment.
20                  Do you have anything to say as to why
21        sentence of law should not be pronounced upon you
22        at this time in this case?
23              MR. BAXLEY:  Yes, Your Honor.  We ask for a
24        presentence investigation.
25              THE COURT:  Your having asked for a
```

358

1      presentence investigation, your sentencing hearing

2      is set for March 18th at nine o'clock a.m.  And

3      the probation officer is ordered to make an

4      investigation into and report back to the Court.

5          MR. BAXLEY:  What about the bond?

6          THE COURT:  No bond.

7          MR. VALESKA:  There's four priors.  It's life

8      without parole.  It's your discretion.

9          THE COURT:  Conviction of a Class A felony,

10     so there's no bond.

11          That will be the 18th day of March.

12     You're in the custody of the sheriff.

13           (The proceedings for February 11, 2004,

14           were concluded.)

15           (Off the Record.)

16

17

18

19

20

21

22

23

24

25

1              IN THE CIRCUIT COURT OF HOUSTON COUNTY

2                         STATE OF ALABAMA

3    STATE OF ALABAMA,              *
                                    *
4    v.                            *     Case No. CC-02-225
                                    *
5    RUBEN COREY MCNABB,           *
                                    *
6        Defendant.                *

7

8

9

           REPORTER'S OFFICIAL TRANSCRIPT ON APPEAL
10

11

12

13   Before:

14            The Honorable Jerry M. White

15                 March 18, 2004

16

17

     APPEARANCES:
18

             For the State
19
                  Amy Mendheim, Esquire
20                Assistant District Attorney

21           For the Defendant

22                M. Hampton Baxley, Esquire
                  Dothan, Alabama
23

24
     Carla H. Woodall
25   Court Reporter

```
 1                         PROCEEDINGS
 2            THE COURT:  We'll take Ruben Corey McNabb
 3        first.  Do you have a copy of the Code?
 4                Mr. Baxley, I'll hear you insofar --
 5            MR. BAXLEY:  I've got one problem here.  I'm
 6        just now getting notice of previous convictions.
 7        I got notice a long time ago about three
 8        convictions.  They have added a fourth one to it,
 9        and I just received notice about it.  I'm usually
10        allowed a reasonable amount of time, and five
11        minutes I don't think is too reasonable.
12            THE COURT:  So what are you asking?  Are you
13        asking for a continuance?
14            MS. MENDHEIM:  Judge, whether he has three or
15        four, it's not going to matter.
16            THE COURT:  That's true.
17                It appears that -- which one did you
18        not not get notice of?
19            MR. BAXLEY:  Well, I still really don't have
20        notice yet.
21            THE COURT:  What does the law say as to how
22        much time -- how much notice you have to have?
23            MR. BAXLEY:  Reasonable time prior to the
24        hearing the Defendant shall be given notice of
25        prior convictions that the State intends on using,
```

1    Your Honor.  And I hate to say this, I mean, I've

2    obviously got a little more work to do if they are

3    saying another one is there.

4         MS. MENDHEIM:  Judge, we would be happy to

5    have him sentenced on three priors.  It's not

6    going to make any difference whether it's three or

7    four.

8         THE COURT:  It really isn't.  If they prove

9    three under the Habitual Offender Act.

10        MR. BAXLEY:  The only one we're arguing about

11   is the carrying a concealed firearm.

12        THE COURT:  Do what?

13        MR. BAXLEY:  There's a carrying a concealed

14   firearm, Judge, and it's not a felony under the

15   law; and, therefore, it can't --

16        THE COURT:  Well, you know, we never seem to

17   be ready --

18        MS. MENDHEIM:  Judge, I have -- we've got

19   three that are not in question.

20        THE COURT:  That are not?

21        MS. MENDHEIM:  Yes, sir.

22        THE COURT:  What are those?

23        MS. MENDHEIM:  Possession of cocaine with

24   intent to sell.

25        MR. BAXLEY:  One of the four I was never

1    given notice of.

2        THE COURT:  Okay.  Fine with me.  We will

3    continue it until next week.  I mean, if you feel

4    that that's going to make a difference for you,

5    then certainly we'll continue it.  I mean, we've

6    had forty days to get ready for today.

7        MR. BAXLEY:  Your Honor, I've gone by the

8    D.A.'s office several times.  And they have never

9    had this available for me.  I'm not trying to

10   berate Amy or anybody there.  I have definitely

11   tried to get these things.  I asked for notice of

12   those four.  I was never given those things.

13       THE COURT:  We'll set this March 24th, eleven

14   a.m.

15       MR. BAXLEY:  Even the investigation by

16   probation and parole does not have the one I'm

17   questioning as well.

18       THE COURT:  You know, all of this is purely

19   academic.  If anybody should know whether these

20   are true or not, he should know.

21       MR. BAXLEY:  Yes, sir.  And he's claiming

22   it's not.

23       THE COURT:  He says it's not?

24       MR. BAXLEY:  Yes, sir.

25       THE COURT:  Based on the fact she had

1      certified copies?

2          MR. BAXLEY:  Your Honor, my client has an

3      extensive criminal history.  Most of it

4      misdemeanors and things reduced to misdemeanors.

5      And, therefore, it could be some discrepancy

6      somewhere in the record keeping.

7          THE COURT:  I'm going to give you the benefit

8      of the doubt.  I will give you seven days.

9              (The proceedings for March 18, 2004,

10             were concluded.)

11             (Off the Record.)

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1          IN THE CIRCUIT COURT OF HOUSTON COUNTY

2                   STATE OF ALABAMA

3   STATE OF ALABAMA,              *
                                   *
4   v.                            *     Case No. CC-02-225
                                   *
5   RUBEN COREY MCNABB,            *
                                   *
6        Defendant.                *

7

8

9        REPORTER'S OFFICIAL TRANSCRIPT ON APPEAL

10

11

12

    Before:

13
            The Honorable Jerry M. White
14
                 March 24, 2004
15

16

17  APPEARANCES:

18          For the State

19              Douglas A. Valeska, Esquire
                District Attorney
20
            For the Defendant
21
                M. Hampton Baxley, Esquire
22              Dothan, Alabama

23

24
    Carla H. Woodall
25  Court Reporter

```
 1                        PROCEEDINGS
 2               (State's Exhibit No. 1 was marked for
 3               identification for the purposes of the
 4               sentencing hearing.)
 5          THE COURT:  This sentencing hearing was
 6     originally set for I believe it was March 17th --
 7     no, March 18th at nine o'clock a.m.  And it was
 8     continued on that day because the Defendant
 9     asserted that he was not aware of a conviction
10     that the State gave notice that they were going to
11     rely upon for sentencing in accordance with the
12     Habitual Offender Act.
13               Mr. Baxley, I will hear you now.  Do
14     you want him to go first?
15          MR. BAXLEY:  Yes, sir.
16          MR. VALESKA:  Judge, I've offered State's
17     Exhibit 1, the prior convictions of the Defendant,
18     certified exemplified priors in front of you from
19     the State of Florida, Judge White, in the case
20     showing you, the Court, that he has three felony
21     possession cases possession of cocaine with intent
22     to sell on three different cases as well as
23     carrying a concealed weapon case.  I can't use the
24     carrying a concealed weapon for purpose of
25     Habitual Offender, but you have a right to
```

1    consider that in relationship to the punishment

2    you're going to give in the case.  The probation

3    officer did a report in the case which is in front

4    of the Court.  It talks about his priors, prior

5    offenses, prior criminal activity.  I would remind

6    the Court -- I apologize, I was not here for the

7    18th sentencing hearing.  You continued it today.

8    Served notice on the Defendant about his priors.

9    But this Defendant did testify in the trial.  He

10   got up there and admitted during the trial that he

11   had prior convictions for drugs.  He gave

12   testimony on his own behalf.  So those are the

13   three prior felonies for purposes of Habitual

14   Offender under Section 13A-5-9 Subsection C, in

15   all cases where a defendant has previously been

16   convicted of three felonies and after such

17   conviction has committed another felony he or she

18   must be punished as follows.  And we go down to

19   Section C3, which says upon a conviction of a

20   Class A felony where the Defendant has no prior

21   convictions for any Class A felony, he or she must

22   be punished by imprisonment for life or with life

23   without the possibility of parole in the

24   discretion of the trial court.  So, Judge, the

25   range of punishment we have in this case to

1      consider that you can sentence him to life in the

2      penitentiary or life without parole.  Based on

3      McNabb's prior felony and the three felonies, and

4      the robbery in this case where a firearm was used

5      and threats made to the victims in this case, we

6      ask you to sentence him to life without parole

7      under the Habitual Offender Act, the three prior

8      felonies which we have served copies to you.

9            I would like to remind the Court also

10     when he was arrested in Florida he gave the name

11     of another individual, not even his own name,

12     saying he was Bryan Thomas.  And then the officers

13     checked and determined the photo he had that he

14     was not that person.  And that he also ran and

15     escaped from them at the time and they had to

16     chase him down and catch him.  That he had been --

17     from his own testimony he knew there was a warrant

18     for robbery in the first degree and he had gone

19     to Florida.  And as I recall the testimony, said

20     he never had any plans to come back to the state

21     of Alabama based on the robbery charge.  So based

22     on that we ask you to give him life without parole

23     so victims in this community, this state will

24     never have to face McNabb again with a deadly

25     weapon, a pistol, at the Winn Dixie like occurred

```
1       to those victims.

2               Thank you.

3               THE COURT:  Mr. Baxley?

4               MR. BAXLEY:  Your Honor, taking those

5       arguments into consideration Mr. Valeska has

6       brought up, I would remind the Court that even

7       though Mr. McNabb was found guilty of a jury of

8       his peers, he still maintains his innocence and

9       has maintained innocence from the beginning of

10      this process.  As you will recall after the

11      mistrial of this case, he came back to Alabama

12      voluntarily without any coercion whatsoever and

13      turned himself back in to face trial again.  Had

14      he been guilty of this, I would assume he would

15      have run somewhere else.  The man came back

16      voluntarily and to face trial.  Unfortunately the

17      jury did not see his side of the case.

18      Additionally, the facts of this case were all

19      circumstantial.  There were, you know, nothing

20      physically attached him to that scene.  There were

21      witness testimony.  I can't re-try the case here

22      in front of you.  But Mr. McNabb is a

23      twenty-eight-year-old man.  He has a long life

24      ahead of him.  There's absolutely no reason he

25      should stay -- not have the possibility of being
```

```
 1        paroled at some point during his prison sentence.
 2        We know for a fact here today that the range of
 3        punishment.  We agree with that.  We have no other
 4        option to face other than Habitual Offender Act.
 5        Mr. McNabb does have a caring, loving family.  His
 6        wife has come here every single time during the
 7        process.  She has four children.  They need a
 8        father in their life.  The man needs to be able to
 9        get out of the system one day.  We need to allow
10        him rehabilitation for a certain amount of time
11        and then allow the possibility of parole to let
12        him out of the system one of these days, Your
13        Honor.  There's nothing that would state Mr.
14        McNabb might not eventually recover from whatever
15        things going on in his head that make him commit
16        crimes.  Of course, I still must temper that with
17        the fact that he has maintained his innocence
18        during this process.
19              Additionally, if you do refer to the
20        pardon and paroles investigation, the officer has
21        indicated that a medium to maximum sentence
22        range.  I assume that if the officer had found him
23        to be an absolute danger he would have simply
24        stated the maximum range.  Therefore, he has left
25        open the option based on his investigation of Mr.
```

1    McNabb's past and his interrogation of Mr. McNabb

2    himself that medium range would be in order here.

3    Obviously there is no such thing as a medium

4    range in this.  There's only life or life without

5    the possibility of parole.  Therefore, we would

6    suggest a lighter end of that range being life

7    with the possibility of being paroled one of these

8    days, Your Honor.

9            And Mr. McNabb would like to make one

10   statement.

11           THE COURT:  Okay.

12           THE DEFENDANT:  Your Honor, I would just like

13   you to take into consideration that I did turn

14   myself in even though I did get found guilty, Your

15   Honor.  I would like a chance to go back home to

16   my wife and kids one day.

17           THE COURT:  All right.  It appears from the

18   probation officer's report that there was a

19   conviction that the State has not filed anything

20   on.  That he was charged with armed robbery back

21   in 1996, and it was reduced from armed robbery to

22   larceny for which he received a sentence to the

23   penitentiary of one year.

24           MR. BAXLEY:  That was a misdemeanor he was

25   convicted of, Your Honor.

1          MR. VALESKA:  If I could point out, you hit

2     the nail on the head.  He was charged with

3     robbery.  And we asked him about that when he

4     testified on the witness stand.  What occurred,

5     you hit the nail on the head.  The district

6     attorney, the state's attorney, plea bargained it

7     down.  We did have the paperwork.  But they gave

8     him a misdemeanor.  So I couldn't use it for

9     felony.

10         THE COURT:  So that is not under Florida law

11    a felony?

12         MR. VALESKA:  No.  When they reduced it, it

13    became a misdemeanor.  He was charged with

14    robbery, which is a felony in Florida, and they

15    reduced the case.  And I asked him about that on

16    the witness stand in that case if you will recall.

17    But, once again, that shows prior criminal

18    activity on his behalf.

19         THE COURT:  Do you know what the

20    circumstances were?

21         MR. VALESKA:  Yes, sir.  I recall --

22         MR. BAXLEY:  Your Honor, I believe he

23    testified to that at trial and the circumstances

24    of that were that an individual friend of his

25    stole his wallet and he got the wallet back and

1    that some fight ensued about that transaction

2    there.  So that's what the testimony was at trial.

3    This was not some armed robbery at another grocery

4    store or anything of that nature.

5         MR. VALESKA:  I dispute that.  I recall the

6    paperwork when I had it in my hands, there was a

7    robbery.  The police were called.  And I can't

8    tell the Court if the victim did not show up to

9    testify.  But they did reduce it.  Once again, he

10   was charged with robbery.  As you can recall, the

11   Defense made the argument to you and the Defendant

12   himself on the stand, well, it wasn't robbery, it

13   was theft.  It was his own wallet.  Once again, if

14   it was his own wallet, he plead guilty, Judge, to

15   stealing his own wallet?  I do have the

16   paperwork.  But, once again, it was not a felony.

17        THE COURT:  I remember now.

18            Ruben McNabb, approach the bench,

19   please.

20        THE DEFENDANT:  (Complied.)

21        THE COURT:  Now, Ruben McNabb, the jury back

22   on February 11, 2004, having found you guilty of

23   robbery in the first degree, based upon that jury

24   verdict, I hereby adjudge you guilty of robbery in

25   the first degree as charged in the indictment.

1          Do you have anything to say as to why

2     sentence of law should not be pronounced upon you

3     at this time in this case?

4          THE DEFENDANT:  No, sir.

5          THE COURT:  I hereby sentence you to

6     imprisonment in the penitentiary of the State of

7     Alabama for the term of your natural life without

8     parole.

9               You're in the custody of the sheriff.

10              State's 1 is admitted.

11              (State's Exhibit No. 1 was admitted for

12              the purposes of the sentencing hearing.)

13              (The proceedings for March 24, 2004,

14              were concluded.)

15              (Off the Record.)

16

17

18

19

20

21

22

23

24

25

```
 1                    * * * * * * * * * * *

 2                    REPORTER'S CERTIFICATE

 3                    * * * * * * * * * * *

 4      STATE OF ALABAMA

 5      COUNTY OF HOUSTON

 6

 7             I, Carla H. Woodall, Court Reporter and

 8      Notary Public in and for the State of Alabama at Large,

 9      do hereby certify that the above-styled and numbered

10      cause was reported stenographically by me and is a true

11      and correct transcript of the testimony, objections,

12      motions, rulings of the Court, and was transcribed by

13      or under my direction and control.

14             I further certify that I have filed all

15      exhibits offered in the trial of this cause, if any,

16      with the Circuit Clerk of Houston County, Dothan,

17      Alabama, for incorporation into the Record on Appeal.

18             I further certify that I have on this day,

19      filed with the Clerk of the Court of Criminal Appeals,

20      the Attorney General, and the parties here involved, a

21      copy of the Reporter's Index to the Testimony and a

22      Certificate of Completion of Reporter's Transcript of

23      the said cause.

24             I further certify that I have filed the

25      original and three copies of this transcript in the
```

1    office of the Circuit Clerk of the Circuit Court of

2    Houston County, Dothan, Alabama.

3

4        Done this the 28th day of July, 2004.

5

6

7                     Carla H. Woodall
                        Court Reporter and Notary Public
8                     State of Alabama at Large

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

| State of Alabama<br>Unified Judicial System<br><br>Form ARAP 13 | CERTIFICATE OF COMPLETION<br>REPORTER'S TRANSCRIPT | Page Number<br><br>376 |
|---|---|---|

TO:  The Clerk of the Court of Criminal Appeals
     P. O. Box 301555
     Montgomery, Alabama 36130-1555

     Fax: (334) 242-4689

Criminal Appeals Case Number    CR 03-1141

Ruben Corey McNabb                    v.    State of Alabama
**Appellant's Name**                          **Appellee**

On appeal from the:  [✓] Circuit Court of
                     [ ] District Court of      Houston  County
                     [ ] Juvenile Court of

Trial Court Case Number  CC-02-225

Notice of Appeal Date  3-30-2004

I, Carla H. Woodall , certify that I have this date completed and filed with the clerk of the trial court an original and three copies of a true and correct transcript of all proceedings in the above referenced case that were reported by me and were specifically designated by the appellant for inclusion on the Reporter's Transcript Order.  The transcript, which is numbered serially in the upper right-hand corner of each page, begins with a copy of the Reporter's Transcript Order and an index of both the exhibits and the testimony of the witnesses.  The original transcript concludes with the original of this notice and the copies of the transcript conclude with copies of this notice.  The page number appearing in the upper right-hand corner of this certificate is the last page of my portion of the transcript in this case.

Done this the  28  day of  July  , 2004 .

_Carla H. Woodall_
Court Reporter

FILING AND SERVICE OF THIS FORM:    Pursuant to Rule 11(b), A.R.App.P., the court reporter should file a copy of this certificate with the Clerk of the Court of Criminal Appeals and should serve copies of the certificate on counsel for the appellant or the appellant if he or she is not represented by appellate counsel, the attorney general and the district attorney, unless the appeal is from a municipal appeal, in which event a copy of the form should be served on the municipal prosecutor rather than the attorney general and district attorney.

| | Total pages including this page 574 |
|---|---|

## CERTIFICATE OF COMPLETION AND TRANSMITTAL
## OF RECORD ON APPEAL BY TRIAL CLERK

RUBEN McNABB
_____
       Appellant .

       V.

    State of Alabama
      Appellee

TO: The Clerk of the Court of
    Criminal Appeals of Alabama

Case No. _____CC2002-225_____

Date of Notice of Appeal __March 30, 2004__

I certify that I have this date completed and transmitted herewith to the appellate court the record on appeal by

assembling ____170____ pages of the Clerk's record, and ___403___ pages of

the Court Reporter's transcript, and that one copy of each of the record on appeal
has been served on the defendant and the Attorney General of the State of Alabama for the preparation of briefs.

I certify that a copy of this certificate has this date been served on counsel for each party to the appeal.

DATED this ___2nd___ day of ___August_____ , ___2004___ .

_Judy Bird_____
                            Circuit Clerk
Houston
_____
                            County